Case 4:18-cv-00508 Document 21 Filed on 07/18/19 in TXSD Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
July 18, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLARE STOCKMAN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: 4:18-CV-00508 |
| | § | |
| ANDREW SAUL,[1] | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM AND ORDER

Plaintiff Clare Stockman filed this case under 42 U.S.C. § 405(g) of the Social Security Act for review of the Commissioner's final decision denying her request for disability insurance benefits and supplemental security income under the Act. The Commissioner and Stockman moved for summary judgment. (Dkt. 13, 18). Each party responded. (Dkt. 18, 19). After considering the pleadings, the record, and the applicable law, the court **GRANTS** the Commissioner's motion, **DENIES** Stockman's motion, and **AFFIRMS** the Commissioner's decision denying benefits.[2]

### I. BACKGROUND

**1. Factual and Administrative History**

Stockman filed a claim for social security disability insurance and supplemental security income benefits on September 19, 2014 alleging a disability onset date of February 19, 2009 claiming a crushed spine and tail bone, pain in her spine, inability to sit or stand for long periods

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to FED. R. CIV. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).
[2] The parties consented to the jurisdiction of this Magistrate Judge for all purposes. (Dkt. 20).

of time, and fatigue. (Dkt. 11-4 at 5; Dkt. 11-8 at 6). Following the denial of her application and subsequent request for reconsideration, Stockman requested a hearing before an Administrative Law Judge (ALJ). A hearing took place on July 11, 2017. The ALJ issued a decision on August 2, 2017, finding that Stockman was not disabled within the meaning of the Social Security Act. (Dkt. 11-3 at 16-25). The Appeals Council denied review on November 30, 2017, (Dkt. 11-3 at 2-7), and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

## 2. Standard for District Court Review of the Commissioner's Decision

Section 405(g) of the Act governs the standard of review in social security disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Stockman v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

With respect to all decisions other than conclusions of law,[3] "[i]f the Commissioner's findings are supported by substantial evidence, they are conclusive." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been defined as "more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). When reviewing the Commissioner's decision, the court does not reweigh the evidence,

---

[3] Conclusions of law are reviewed *de novo*. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id.* The courts strive for judicial review that is "deferential without being so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1956)).

The court weighs four types of evidence in the record when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Hamilton-Provost v. Colvin*, 605 F. App'x 233, 236 (5th Cir. 2015).

### 3. Disability Determination Standards

The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Water*, 276. F.3d at 718. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A finding at any point in the five-step sequence that the claimant is disabled, or is not disabled, ends the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Work is "substantial" if it involves doing significant physical or mental activities, and "gainful" if it is the

kind of work usually done for pay or profit. 20 C.F.R. §§ 404.1572, 416.972; *Copeland*, 771 F.3d at 924.

In the second step, the ALJ must determine whether the claimant has a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Under applicable regulations, an impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.922(a). Under Fifth Circuit binding precedent, "[a]n impairment can be considered as not severe *only if* it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (emphasis added) (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). "Restated, an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citing *Loza*, 219 F.3d at 391). This second step requires the claimant to make a *de minimis* showing. *Salmond*, 892 F.3d at 817.

If the claimant is found to have a severe impairment, the ALJ proceeds to the third step of the sequential analysis: whether the severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets one of the listings in Appendix 1, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the ALJ finds that the claimant's symptoms do not meet any listed impairment, the sequential analysis continues to the fourth step.

In step four, the ALJ must decide whether the claimant can still perform her past relevant work by determining the claimant's "residual functional capacity" (RFC). 20 C.F.R. §§

4

404.1520(a)(4)(iv), 416.920(a)(4)(iv). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011). The ALJ must base the RFC determination on the record as a whole and must consider all of a claimant's impairments, including those that are not severe. 20 C.F.R. §§ 404.1520(e), 404. 1545(e); *Giles*, 433 F. App'x at 245; *see also Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).

The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove she is not currently working and is no longer capable of performing her past relevant work. *Newton*, 209 F.3d at 453 (citing 42. U.S.C. § 423(d)(1)(A)). If the claimant meets her burden, the burden shifts to the Commissioner at step five to show that the "claimant is capable of engaging in some type of alternative work that exists in the national economy." *Id.* Thus, in order for the Commissioner to find in step five that the claimant is not disabled, the record must contain evidence demonstrating that other work exists in significant numbers in the national economy, and that the claimant can do that work given her RFC, age, education, and work experience. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### 4. The ALJ's Decision

The ALJ performed the standard 5-step sequential analysis. (Dkt. 11-3 at 16-25). The ALJ found that Stockman met the insured status requirements of the Act through June 30, 2013; had not engaged in substantial gainful activity since her alleged onset date of February 19, 2009; and had the severe impairment of "status-post cervical fusion at C5-6 (from motor vehicle accident in 1997)[.]" (Dkt. 11-3 at 18-19). The ALJ determined that none of her impairments, alone or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 20-21).

The ALJ further determined that Stockman had the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c)[4] "[except] no climbing of ladders, ropes, or scaffolds; can occasionally climb stairs and ramps; and occasional stooping, crawling, kneeling, and crouching." (*Id.* at 21). Based on the testimony of a vocational expert, the ALJ found that with these restrictions Stockman could not perform her past relevant work as a horticultural worker. (*Id.* at 23). However, she determined Stockman has the residual functional capacity to perform jobs that exist in significant numbers in the national economy, including industrial cleaner, hospital dietary aide, and dishwasher. (*Id.* at 24). Ultimately, the ALJ concluded that Stockman "has not been under a disability, as defined in the Social Security Act, from February 19, 2009, through the date of this decision[.]" (*Id.* at 25).

## II. ANALYSIS

Stockman asserts the following points of error in her appeal to this court:

1. The ALJ improperly determined that Stockman's back impairments did not meet the requirements of Listing 1.04A and failed to adequately explain why Stockman's impairments failed to meet or equal that listing; and

2. The ALJ improperly determined Stockman's residual functional capacity by:
   a. Failing to perform a function-by-function analysis;
   b. Failing to determine whether Stockman can perform work on a regular and continuing basis;
   c. Failing to consider Stockman's obesity in determining her residual functional capacity;
   d. Drawing an inference from the consistency of treatment sought by Stockman; and
   e. Failing to consider all the evidence in the record.

(Dkt. 13 at 4-15). The court finds that Plaintiff's arguments lack merit and that substantial evidence supports the decision.

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

6

### 1. Substantial evidence supports the ALJ's decision that Stockman's back impairments did not meet the requirements of Listing 1.04A.

The listings are a set of descriptions of physical and mental illnesses and abnormalities, categorized by the body system they affect. *Hawthorne v. Astrue*, 493 F. Supp. 2d 838, 846 (S.D. Tex. 2007). The purpose of the listings is to describe impairments "severe enough to prevent a person from doing any gainful activity" regardless of age, education or work experience. 20 C.F.R. § 416.925(a); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); SSR 83-19, 1983 WL 31248, at *1 (Jan. 1, 1983). "If the claimant's impairment matches or is 'equal' to one of the listed impairments, he qualifies for benefits without further inquiry." *Sullivan*, 493 U.S. at 525. An impairment or combination of impairments meets or equals a listing only if the claimant presents medical findings equal in severity to all the criteria for the most similar listed impairment. *Id.* at 530 ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); SSR 83-19, 1983 WL 31248, at *2 (Jan. 1, 1983) ("An impairment 'meets' a listed condition in the Listing of Impairments only when it manifests the specific findings described in the set of medical criteria for that listed impairment.").

Stockman alleges her impairments meet the requirements of Listing 1.04A, which pertains to "[d]isorders of the spine . . . resulting in compromise of a nerve root . . . or the spinal cord." 20 C.F.R. § 404, Subpt. P, App. 1, § 1.04. This listing requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]" 20 C.F.R. § 404, Subpt. P, App. 1, § 1.04A.

Stockman has not met her burden to show that her impairments meet Listing 1.04A because she has not presented objective medical evidence of "motor loss (atrophy with associated muscle weakness or muscle weakness)." 20 C.F.R. § 404, Subpt. P, App. 1, § 1.04A. Stockman relies heavily on the opinion from Dr. Pawan Grover to support a claim that her impairment meets or medically equals Listing 1.04A. (Dkt. 13 at 6-7). However, Dr. Grover's treatment records do not show that she suffered motor loss as a result of her spinal impairment. (*See* Dkt. 11-15 at 47-49). In fact, after examining Stockman, Dr. Grover noted "5/5 strength in all extremities." (Dkt. 11-15 at 47). In addition to Dr. Grover's assessment of full strength in all extremities, Dr. Abu-Nassar's January 14, 2015 consultative exam demonstrated a normal gait, 5/5 strength in her extremities, normal sensation to touch, and the ability to bend, squat, walk on her toes and heels, and climb one flight of stairs.[5] (Dkt. 11-9 at 52-53); 20 C.F.R. § 404, Subpt. P, App. 1, § 1.00E(1) (explaining motor loss may be evidenced by an inability to walk on the heels or toes, to squat, or to arise from a squatting position.). Stockman's medical records do not contain any evidence of "atrophy . . . with associated muscle weakness . . . accompanied by sensory or reflex loss." 20 C.F.R. § 404, Subpt. P, App. 1, § 1.04A.

Substantial evidence exists to support the ALJ's determination at step three that Stockman's impairments do not meet or equal[6] a listed impairment. Absent evidence of all the

---

[5] Dr. Abu-Nassan's January 2015 exam also reflected a normal straight leg raising test, both supine and seated. (Dkt. 11-9 at 53). While Dr. Grover recorded a positive straight leg raising test at 60 degrees in 2017, he failed to document whether the test was sitting or supine. (Dkt. 11-15 at 48); *see Maddox v. Colvin,* No. H-14-1826, 2015 WL 3826280, at *18 (S.D. Tex. June 18, 2015) ("Listing 1.04A was not met where positive leg raising tests were only intermittently positive and failed to indicate the position-sitting or supine-in which they were performed.")(citing *Nieves v. Astrue*, No. EP-12-CV-069-RFC, 2013 WL 1192013, at *7 (W.D.Tex. Mar. 21, 2013)).

[6] Stockman has failed to demonstrate an impairment that is medically equivalent to the Listing in 1.04A (disorders of the spine). An impairment is "medically equivalent to a listed impairment…if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §404.1526; *Hawthorne*, 493 F. Supp. 2d at 846 ("The claimant has the burden to prove at step three that [her] impairment or combination of impairments is equivalent to or greater than a listed impairment.").

symptoms in Listing 104A, including motor loss, Stockman's impairments cannot meet the listing. *Sullivan*, 493 U.S. at 530-31; *see also Zimmerman v. Astrue*, 288 F. App'x. 931, 937 (5th Cir. 2008) (holding that listing 1.04A not met where "motor strength was '5/5 in all muscle groups,' suggesting no motor loss."); *Davis v. Astrue*, No. H-08-0411, 2009 WL 2408175, at *3 (S.D. Tex. Aug. 3, 2009) (Listing 1.04A not met where "the record did not contain evidence of any motor or reflex loss or atrophy, and in fact the evidence indicated 'muscle strength is 5/5 in the lower extremities.'"); *Gandara v. Astrue*, No. 4:10-cv-4243, 2011 WL 4852327, at *7 (S.D. Tex. Oct. 12, 2011) ("Thus, while Plaintiff may have experienced some of the findings required to meet Listing 1.04A, he did not manifest all of the specified medical criteria of any particular listing . . . .").

Stockman also claims the decision must be remanded due to the ALJ's inadequate explanation of the step three determination, citing *Audler v. Austrue*, 501 F.3d 446 (5th Cir. 2007). (Dkt. 13 at 8). In *Audler*, the Fifth Circuit held that the ALJ erred at step three because, without mentioning a specific listing and without any explanation, the ALJ "summarily concluded," that the claimant's impairments were not severe enough to equal to any listing in Appendix 1. *Audler*, 501 F.3d at 448. Here, the ALJ singled out Listing 1.04 and discussed medical records spanning several years as support for her conclusion that Stockman's impairment did not meet a listing. (*See* Dkt. 11-3 at 20-21). In her step three analysis, the ALJ mentioned Stockman's 2014 physical examination, which revealed no musculoskeletal or neurological abnormalities. (Dkt. 11-3 at 20, 11-9 at 60-61). She also discussed a January 2015 consultative examination, during which Stockman displayed normal range of motion in her spine. (Dkt. 11-3 at 20, 11-9 at 53). Next, the ALJ noted that a January 2015 lumbar x-ray was unremarkable and displayed no evidence of lumbar radiculopathy. (Dkt. 11-3 at 20, 11-9 at 56). The ALJ also took note of a January 2017

9

treatment record which shows that Stockman maintained full range of motion in her neck. (Dkt. 11-3 at 20, 11-14 at 4). Unlike the ALJ in *Audler*, the ALJ in this case adequately discussed her reasoning for the decision that Stockman did not meet the requirements of Listing 1.04.

Even had the ALJ erred by failing to explain her reasoning, the error is harmless because, as discussed above, substantial evidence supports the ALJ's step three finding. *See Audler*, 501 F.3d at 448 (requiring harmless error analysis even if ALJ erred by failing to state any reason for step three determination); *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981) (requiring the claimant show prejudice resulting from the ALJ's error); *James v. U.S. Comm'r, Soc. Sec. Admin.*, 6:16-cv-0055, 2018 WL 3129697, at *4 (W.D. La. June 8, 2018) ("To demonstrate the requisite harm, the claimant must demonstrate that the evidence showed that she satisfied [the l]istings . . . ."). For the reasons discussed in this section, the ALJ did not err at step three, and even if she had, the error is harmless, does not require remand, and the step three decision is supported by substantial evidence.

### 2. Substantial evidence supports the ALJ's determination of Stockman's RFC.

Stockman alleges multiple errors by the ALJ with respect to the residual functional capacity determination. A claimant's residual functional capacity, or RFC, is her "remaining ability to work despite all of her limitations resulting from her impairment[s]." *Stockman v. Astrue*, H-09-0656, 2010 WL 1404124, at *10 (S.D. Tex. Mar. 31, 2010) (citing 20 C.F.R. § 404.1545(a)). In evaluating the claimant's RFC, the ALJ must consider how the claimant's impairments affect her physical, mental, and other abilities, as well as the total limiting effects of her impairments. *Stockman*, 2010 WL 1404124, at *10 (citing 20 C.F.R. § 404.1545). The ALJ has the sole responsibility for determining a claimant's RFC based on the record as a whole. 20 C.F.R. § 404.1545(a)(3); *see Villa*, 895 F.2d at 1023.

**Function-by-Function Analysis.** Stockman argues that the ALJ failed to evaluate her residual functional capacity in accordance with SSR 96-8p, 1996 WL 374184, at *3-4 (July 2, 1996), which requires a function-by-function analysis of a disability claimant's ability to perform work related activities. The ALJ's decision demonstrates that her RFC assessment was based in part on the state agency consultants' evaluations, and those evaluations include a function-by-function analysis of Stockman's exertional limitations. (Dkt. 11-3 at 23; Dkt. 11-4 at 7-9, 15-17).

The Fifth Circuit has consistently held that an ALJ is not required to conduct a function-by-function analysis if she bases her RFC assessment, at least in part, on a state medical examiner's report that contains a function-by-function analysis. *See, e.g., Beck v. Barnhart*, 205 F. App'x. 207, 213-14 (5th Cir. 2006) (holding that the ALJ's RFC determination was supported by substantial evidence because it was based on an examining physician's "general evaluation" of claimant's mobility, as well as a non-examining physician's "function-by-function analysis of the impact of [claimant's] impairments on her ability to perform various tasks."); *Onishea v. Barnhart*, No. 03-21028, 2004 WL 1588294, at *2 (5th Cir. July 16, 2004) (holding that the ALJ's reliance on a state examiner's function-by-function analysis is sufficient for the purpose of SSR 96-8p). Therefore, the ALJ did not err by failing to include a separate function by function analysis in her decision.

**Regular and Continuing Basis.** Stockman also argues the ALJ erred by failing to discuss whether she can perform medium work on a regular and continuing basis. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *2. A finding that a claimant can maintain employment on a sustained basis "is generally implicit in the RFC assessment." *Ward v. Barnhart*, 192 F. App'x. 305, 308 (5th Cir. 2006); SSR 96-8p, 1996 WL 374184, at *1 (" . . . RFC is an assessment of an individual's

11

ability to do sustained work-related . . . activities in a work setting on a regular and continuing basis."). An ALJ is not required to make a separate finding that a claimant can maintain employment when the claimant does not suggest a difference between her ability to do work (as determined by RFC) and her ability to sustain that work. *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003) (per curiam). An express finding that the work included in the RFC can be performed on a regular and continuing basis is required only if, "by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Id.* at 619.

Nothing in the record shows that Stockman's symptoms, by their very nature, "wax and wane." In fact, Stockman does not assert that her pain varies in intensity or waxes and wanes; instead, she claims only that the ALJ "fail[ed] to comply" with the Regulations by declining to determine if she can sustain employment. (Dkt. 13 at 10). Because Stockman does not allege symptoms or conditions that wax and wane, the ALJ's RFC determination includes the determination that she can sustain work that is within the limits of the RFC. The ALJ did not err by failing to separately address Stockman's ability to maintain employment. *See Perez*, 415 F.3d 457 (5th Cir. 2005) (quoting *Frank*, 326 F.3d at 619 (citing *Watson v. Barnhart*, 288 F.3d 212, 217-18 (5th Cir. 2002)) ("This court made clear in *Frank* that 'nothing in *Watson* suggests that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case.' . . . Rather, '*Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms.' . . . Without such a showing, the claimant's ability to maintain employment is subsumed in the RFC determination.").

**Obesity.** Stockman argues the ALJ erred by failing to consider her "obesity and obesity-related complications as required by Social Security Ruling 02-01p." Stockman is correct that the ALJ should have discussed the impact of obesity when determining her RFC, even though

Stockman never argued her obesity was a disabling impairment and the ALJ did not include obesity in her finding of severe impairments. *See* SSR 02-1p, 2002 WL 34686281, at *3 ("When the evidence in a case does not include a diagnosis of obesity but does include clinical notes or other medical records showing consistently high body weight . . . we [typically] will use our judgment to establish the presence of obesity based on medical findings and other evidence in the case record[.]") (stating that obesity is a complicating factor for many ailments and is to be considered in assessing an individual's RFC); *Beck*, 205 F. App'x. at 211 ("Social Security rulings indicate that obesity—although itself not a listed impairment—can reduce an individual's [functional capacity] for work activity . . ..").

Although the court assumes the ALJ committed error by failing to discuss the impact of obesity, the error was harmless unless Stockman can demonstrate she was prejudiced by the error. *Caro v. Colvin*, NO. EP-14-CV-212-MAT, 2017 WL 635497, at *3 (W.D. Tex. Feb. 14, 2017) ("Although the ALJ did not directly address [the claimant's] obesity, [the claimant] has failed to show that omission was harmful."); *Willingham v. Comm'r of Soc. Sec. Admin.*, NO. 4:12-CV-00242, 2014 WL 1050286, at *5 (E.D. Tex. Mar. 14, 2014) ("[E]ven if the ALJ erred by failing to discuss independently the effect of Plaintiff's obesity as related to his other impairments, Plaintiff has not shown that he was prejudiced."); *Madrid v. Colvin*, No. 4:12-CV-800-Y, 2013 WL 6641305, at *6 (N.D. Tex. Dec. 17, 2013) (holding that the ALJ's failure to specifically analyze the claimant's obesity pursuant to SSR 02-01p was harmless error); *Vaughn v. Astrue*, No. 3:08-CV-1920-L, 2009 WL 3874607, at *5 (N.D. Tex. Nov. 17, 2009) ("At most, [the ALJ's] failure to specifically refer to obesity in his decision is harmless error . . ..").

The record contains no evidence demonstrating that Stockman's obesity had any impact on her ability to work. Stockman did not mention obesity as an impairment in her application or

during her administrative hearing and her attorney refrained from questioning her at the hearing about the effect of obesity on her other impairments or her ability to work. Stockman's treating and consulting physicians gave no indication that her weight impacted her ability to perform work. The ALJ's failure to discuss the impact of Stockman's mild obesity was harmless error because the record is devoid of any evidence that her obesity impacts her ability to perform the medium work included in her RFC. *See McGee v. Astrue*, No. H-10-575, 2011 WL 11048325, at *4 (S.D. Tex. Feb. 25, 2011) ("Overall, [the claimant] has failed to identify any evidence that indicates her obesity limited her ability to perform basic sedentary work activities and there is no objective evidence that any decreased functioning was attributable to her obesity."); *Zeringue v. Astrue*, No. 3:09-CV-00063, 2010 WL 3021998, at * 7 (M.D. La. July 9, 2010) (finding harmless error in failure to comply with SSR 02-01p where "[t]here is no medical evidence that [claimant's] obesity aggravates [his] degenerative disc disease of the lumbar spine . . . or that it has any effect on his ability to perform sedentary work."); *Conerly v. Barnhart*, No. 1:06CV467-LG-JMR, 2008 WL 724030, at *5, n.2 (S.D. Miss. Mar. 17, 2008) (holding that an ALJ's failure to discuss obesity is not reversible error where plaintiff's physician noted obesity but did not find work limitations due to obesity).

**Consistency and Frequency of Treatment.** Stockman alleges the ALJ erred in drawing an inference about her symptoms from the consistency and frequency of her medical treatment. When determining whether the intensity and persistence of a claimant's symptoms are consistent with the evidence, an ALJ may consider the claimant's attempts to seek medical treatment. SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017). When considering treatment history, an ALJ may consider the impact of a claimant's inability to afford treatment or lack of access to free or low-cost medical services. *Id.* at *10.

14

Stockman claims the ALJ did not consider any explanations for the dearth of treatment records between 2011 and 2015 (Dkt. 13 at 14-15); yet, the ALJ noted in her decision that Plaintiff experienced difficulty in obtaining treatment due to the denial of claims by insurance companies. (Dkt. 11-3 at 21). Moreover, the ALJ scrutinized other factors in determining Stockman's RFC, including self-reported daily activities, objective medical records, and the opinion of treating and consulting physicians. (*Id.* at 21-23). Stockman has not shown error by the ALJ on this point.

**Substantial Evidence.** Stockman argues that, in making her RFC determination, the ALJ failed to address evidence that supports a disability finding. (Dkt. 13 at 10-11). The ALJ discussed those records about which Plaintiff complains at step two and step three rather than step four. (*See* Dkt. 11-3 at 19-21). "'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler*, 501 F.3d at 448 (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)). As such, the court's analysis is limited to whether the record contains substantial evidence to support the RFC determination.

In this case, substantial evidence supports the ALJ's RFC finding. In reaching her decision, the ALJ considered the objective medical evidence of Plaintiff's allegedly disabling back pain. An MRI of Stockman's thoracic and lumbar spine, dated July 24, 2009, revealed mild degenerative changes and no sign of spinal stenosis, focal disc bulge, or focal disc protrusion. (Dkt. 11-9 at 39). An x-ray of the lumbar spine, dated January 14, 2015, was "essentially unremarkable" showing only mild degenerative changes. (Dkt. 11-9 at 56). X-rays dated November 28, 2016 were largely unremarkable as well – there was no evidence of compression fracture in the lumbar spine and only mild degenerative changes of the cervical spine. (Dkt. 11-14 at 38-39). An MRI dated February 20, 2017 showed multilevel degenerative disc changes of the cervical and lumbar spine but no acute compression fracture. (Dkt. 11-14 at 11-14). Multiple physical examinations revealed

15

normal range of motion of the neck and back and other signs of normal musculoskeletal function. (Dkt. 11-9 at 53 (showing normal gait, normal extension, flexion, and lateral flexion of the back, and normal range of motion); Dkt.11-14 at 4-5 (showing normal gait, full range of motion in the head, neck, and back); Dkt. 11-14 at 9-10 (showing normal gait, full range of motion in head, neck, and back, no impairment of walking on toes or heels)).

Moreover, the majority of the evidence Stockman relies on consists of self-reported symptoms of pain. (*See* Dkt. 13 at 11-12). Although an ALJ must consider subjective complaints of pain in her disability determination, *Hamilton-Provost*, 605 F. App'x at 236, subjective evidence does not take precedence over conflicting medical evidence. *Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir. 1985). Subjective complaints of pain cannot form the basis for a disability finding without objective evidence to show that the symptoms could reasonably be expected to produce the symptoms alleged. *Id.* (holding the claimant failed to meet her burden to offer corroborating proof of allegedly debilitating back pain). The objective medical evidence does not support her complaints of disabling back pain. For these reasons, the ALJ's RFC assessment is supported by substantial evidence and should not be disturbed.

### III. CONCLUSION

For the reasons discussed above, the court **GRANTS** the Commissioner's motion, **DENIES** Stockman's motion, and **AFFIRMS** the final decision of the Commissioner.

Signed on July 18, 2019, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge